IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRAND MARKETING GROUP, LLC *doing business as* THERMABLASTER,

        Plaintiff,

        v.

INTERTEK TESTING SERVICES NA, INC. *doing business as* INTERTEK TESTING SERVICES,

        Defendant.

12cv1572
**ELECTRONICALLY FILED**

## Memorandum Order

Pending before this Court are defendant's motions to compel arbitration (doc. no. 25) and to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(7) (doc. no. 27).  After careful consideration of the motions (doc. nos. 25 and 27), plaintiff's responses (doc. nos. 30 and 32), and replies (doc. nos. 34 and 35), defendant's motions will be DENIED (with exception of negligence claim which plaintiff has agreed to dismiss).

### I.    Factual Background

Plaintiff, Brand Marketing Group, ("Brand") is a limited liability company which imports and sells vent free gas room heaters throughout the United States.  Doc. No. 19 at ¶ 1 (Amended Complaint).  Defendant, Intertek Testing Services, N.A., Inc. ("Intertek NA') is a subsidiary of Intertek Group PLC ("Intertek Group"), a multinational inspection, product testing and certification company headquartered in London.  *Id.* at ¶ 2.  Intertek Testing Services Shenzhen, Ltd. ("Interteck Shenzhen") is a separate corporate subsidiary of Intertek Group located in Guangzhou, China.  *Id.*  Intertek NA is a Nationally Recognized Testing Laboratory accredited to certify products compliant with North American Safety Standards.  However, Intertek

Shenzhen, the location where the relevant testing in this matter took place, is not accredited to certify compliance with North American Safety Standards.

Prior to Brand's involvement in the circumstances at issue here, Reecon M & E Co., Ltd. ("Reecon"), a Chinese manufacturing company, had  contracted with Intertek NA for testing services related to other unrelated products.  Doc. No. 19 at Exhibit 4, and Doc. No. 31, Exhibit C.

According to the Declaration of David O. Brand, importantly, several months *after* the Certification Agreement was executed (in August 2010), Brand was, for the first time, put into contact with Reecon, through an intermediary Chinese manufacturing company.  Doc. No. 31, Exhibit D.

Following Ace Hardware Corporation's ("Ace") indication of an intent to purchase the heaters in December 2010, Brand then contacted Reecon regarding the manufacture of the heater.  Doc. No. 19 at ¶ 15, 16.  Once Brand received the purchase order from Ace on April 26, 2011, Brand worked with Reecon to have the heaters certified "compliant" with American National Standards Institute ("ANSI") standards, which governs unvented room heaters for sale in the United States.  Doc. No. 19 at ¶ 21.

In exchange for money paid by Reecon, in accordance with the Certification Agreement, Intertek NA provided testing and certification services for the heaters.  The heaters were tested to the ANSI standard at Intertek Shenzhen.  Doc. No. 19 at ¶ 21-22.

On November 14, 2011, Intertek issued a Test Report certifying compliance with the ANSI standard.  Doc. No. 19 at ¶ 35.  Plaintiff alleges that even though Intertek Shenzhen was not accredited a Nationally Recognized Testing Laboratory, on February 29, 2012, Intertek NA issued an Authorization to Mark ("ATM") indicating that a product complies with the standard it

was tested to (in this case ANSI Z21.11).  Doc. No. 19 at ¶ 60, Exhibit 7.   According to plaintiff,

the test report and ATM were representations made by Intertek NA that the heaters complied

with the ANSI standard.

Then, on March 8, 2012, Intertek NA suddenly suspended its listing and labeling

privileges for Brand's heaters, and Intertek NA advised Reecon to quarantine all inventories of

products covered by the November 14, 2011, test report.  Doc. No. 19 at ¶ 62.  On March 12,

2012, Intertek NA employee, Rick Curkeet, sent an email to Ace advising that "the

Thermalblaster (sic) units have been found to be in non-compliance with the specified standard.

We are expecting the manufacturer to take appropriate actions in this matter.  Obviously you

should quarantine those you have and keep them out of the market."  Doc. No. 19 at ¶ 64, and

Exhibit 9.

According to plaintiff, "[t]his purposeful action and others by Intertek NA were intended

to and did result in harm to Brand's contractual relationship with Ace."  Doc. No. 31 at 3.

Brand has filed suit in the Court of Common Pleas of Allegheny County, Pennsylvania,

on September 20, 2012, and this matter was properly removed to this Court on October 30, 2012.

Doc. No. 1.  Intertek NA filed its first motion to dismiss on November 21, 2012 (doc. no. 13),

and on November 29, 2012, Brand filed an Amended Complaint, alleging the following tort

theories: (1) Violation of Section 552 of the Restatement of Torts (Second); (2) Interference with

Contractual Relations; (3) Disparagement; (4) Corporate Defamation; and (5) Negligence.  Doc.

No. 19.

## II.   <u>Motion to Compel Arbitration</u>

"Under Pennsylvania law, the parties must submit an issue to arbitration where: (1) the

parties entered into an agreement to arbitrate and (2) the dispute falls within the scope of that

agreement." *McAlister v. Sentry Ins. Co..* 958 F.2d 550, 552 (3d Cir. 1992)(citing *Rocca v. Pa Gen. Ins. Co.*, 516 A.2d 772, 772-73 (Pa. Super. 1986)).  In resolving a motion to compel arbitration, the Court employs the same standard as a motion for summary judgment.  *Control Screening LLC v. Tech. Application & Prod. Co.*, 687 F.3d 163, 167 (3d Cir. 2012).

"If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *E.I. Dupont de Nemours & Co. v. Rhone Poulenc & Resin Intermediates, S.A.S.,* 269 F.3d 187, 194 (3d Cir. 2001)(citations omitted).  The United States Court of Appeals for the Third Circuit has unequivocally held that "a non-signatory cannot be bound to arbitrate unless it is bound under traditional principles of contract and agency law" to be akin to a signatory of the underlying agreement.  *Id.*

Even a cursory review of the Certification Agreement on which defendant relies to support its claim that Brand is required to arbitrate reveals that Brand neither signed the agreement, nor is Brand even mentioned within the four corners of the document.  Doc. No. 19, Exhibit 4.  As Brand points out, the reason for Brand's absence from the agreement is because the Certification Agreement predates by several months, Reecon's first contact with Brand (and there has been no evidence presented to the contrary).  Therefore, the arbitration provision of the Certification Agreement does not cover Brand, nor the current dispute.

As for defendant's arguments that Brand is either an alter-ego of Reecon, or that Brand is a third-party beneficiary to the Certification Agreement, the allegations of the Amended Complaint as well as the exhibits attached thereto do nothing to establish that Brand's relationship with either Intertek NA or Reecon to be one of a third-party beneficiary.   The law is equivocal on this point - - in order for a person or entity to be third party beneficiary to a contract, "both contracting parties must have expressed an intention that the third party be a

beneficiary, and that intention must have affirmatively appeared in the contract itself." *Scarpitti v. Weborg*, 609 A.2d 147, 149 (Pa. 1992).

### III.   **Motion to Dismiss**

In considering a Rule 12(b)(6) motion, Federal Courts require notice pleading, as opposed to the heightened standard of fact pleading.  Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the Complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the Complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 675, 679).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief."  *Fowler*, 578 F.3d at 210.  "While legal

conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Id.* at 210-11; *see also Malleus,* 641 F.3d at 560.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8.  Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements.  *Id.* at 556.  Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss.  *Fowler*, 578 F.3d at 212; *see also Guirguis v. Movers Specialty Servs., Inc.*, 346 F. App'x. 774, 776 (3d Cir. 2009).

In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief.  *Twombly*, 550 U.S. at 563 n.8.

## The Gist of the Action Doctrine Does Not Bar Plaintiff's Tort Claims

Defendant argues that the "gist of the action" doctrine bars plaintiff's tort claims because the action is based upon the Certification Agreement.  The "gist of the action" rule has not been addressed by the Supreme Court of Pennsylvania, but was first recognized in 1992 by the Superior Court of Pennsylvania in *Bash v. Bell Tel. Co.*, 601 A.2d 825 (Pa. Super. 1992).

As described by the United States Court of Appeals for the Third Circuit:

Under [Pennsylvania's] "gist of the action" test,

to be construed as a tort action, the [tortious] wrong ascribed to the defendant must be the gist of the action with the contract being collateral . . . . [T]he important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus.  *Redevelopment Auth. of Cambria County v. International Ins. Co.*, 454  Pa.Super. 374, 685 A.2d 581, 590 (1996) (*en banc*) (*quoting Phico Ins. Co. v. Presbyterian Med. Servs. Corp.*, 444 Pa.Super. 221, 663 A.2d 753, 757 (1995)). In other words, a claim should be limited to a contract claim when "the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of

6

torts." *Bash v. Bell Telephone Co.*, 411 Pa.Super. 347, 601 A.2d 825, 830 (1992).

*Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 103-04 (3d Cir. 2001).

In *Etoll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10 (Pa. Super. 2002), the

Superior Court of Pennsylvania stated:

> ¶ 28 Thus, persuasive authority interpreting Pennsylvania law has restated the
> gist of the action doctrine in a number of similar ways. These courts have held
> that the doctrine bars tort claims: (1) "arising solely from a contract between the
> parties" (*Galdieri* [*v. Monsanto Co.*, 2002 U.S. Dist. Lexis, 11391 at *33 (E.D.
> Pa. 2002)]; (2) where "the duties allegedly breached were created and grounded in
> the contract itself" (*Werner Kammann* [*Maschinenfabrick GmbH. v. Max Levy
> Autograph, Inc.*, 2002 WL 126634 at **6-7 (E.D.Pa. 2002)]; (3) where "the
> liability stems from a contract" (*Asbury* [*Auto. Group LLC. v. Chrysler Ins. Co.*,
> 2002 WL 15925 at *3 (E.D.Pa. 2002)]; or (4) where the tort claim "essentially
> duplicates a breach of contract claim or the success of which is wholly dependent
> on the terms of a contract." (*Polymer Dynamics* [, *Inc. v. Bayer Corp.*, 2000 WL
> 1146622 at *6 E.D.Pa. 2000)].

*Etoll*, 811 A.2d at 19-20 (parallel citations omitted).

"In some circumstances, 'it is possible that a breach of contract also gives rise to an

actionable tort[.] To be construed as in tort, however, the wrong ascribed to defendant must be

the gist of the action, the contract being collateral.'" *Pediatrix Screening, Inc. v. TeleChem

Intern., Inc.*, 602 F.3d 541, 549-550. (quoting *Bash v. Bell Tel. Co.*, 601 A.2d 825, 829 (Pa.

Super. 1992)).

At this early stage of the proceedings, it appears that the gist of plaintiff's action is and

remains in tort, with the Certification Agreement being collateral to the alleged torts.

Accordingly, the motion to dismiss on this basis will be DENIED.[1]

---

[1] Defendant also argues that the request for punitive damages should be stricken. However, the
Amended Complaint makes sufficient allegations that defendant's conduct "was outrageous,
either because of the defendant's evil motive or reckless indifference to the rights of others."
*Summit Fasteners, Inc. v. Harleysville Nat. Bank & Trust Co., Inc.*, 599 A.2d 203, 207 (Pa.
Super. 1991) (citing *Gray v. H.C. Duke & Sons*, 563 A.2d 1201 (Pa. Super. 1989)). Therefore,
the Court declines to strike the request for punitive damages at this early stage of the litigation.

### Economic Loss Doctrine Does Not Bar Plaintiff's Claim for Negligent Misrepresentation

Defendant next argues that the economic loss doctrine bars plaintiff's negligence claims (Count I and Count V). However, since plaintiff has agreed to dismiss its negligence claim at Count V of the Amended Complaint (see doc. no. 33), the Court will examine only plaintiff's claim for negligent misrepresentation under the Restatement of Torts § 552 (Second).[2]

Under Pennsylvania law, "the economic loss doctrine . . . precludes recovery in tort if the plaintiff suffers a loss that is exclusively economic, unaccompanied by an injury to either property or person." *Bouriez v. Carnegie Mellon Univ.*, 430 F. App'x 182, 187 (3d Cir. 2011) (citing *Excavation Techs., Inc. v. Columbia Gas Co. of Pa.*, 985 A.2d 840, 841 n.3 (Pa. 2009)).

---

[2] Section 552 provides:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

>> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

>> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

> (3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

"Pennsylvania has not limited the applicability of the economic loss doctrine to situations in which the parties are bound by a contractual relationship or are otherwise in privity with one another." *Id.* "Pennsylvania has, however, carved out an exception to the economic loss doctrine for claims of negligent misrepresentation asserted pursuant to Section 552 of the Restatement (Second) of Torts." *Id.* (citing *Excavation Techs.*, 985 A.2d at 840). Thus, the question is "whether [Intertek] owe[d Brand] a duty pursuant to Section 552, as such a duty would preclude the application of Pennsylvania's economic loss doctrine." *Id.*

Defendant cites to *Excavation Techs., Inc. v. Columbia Gas Co of Pa.*, 936 A.2d 111, 113-16 (Pa. Super. Ct. 2007) in support of its claim that Section 552 only applies to design professionals. However, the Pennsylvania Supreme Court did not adopt the reasoning of the Superior Court when the case was appealed. *See Excavation Techs.*, 985 A.2d at 841.

In *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, the Pennsylvania Supreme Court stated that the Section 552 exception applies "where information is negligently supplied by one in the business of supplying information, *such as* an architect or design professional, and where it is foreseeable that the information will be used and relied upon by third persons, even if the third parties have no direct contractual relationship with the supplier of information." 866 A.2d 270, 286 (Pa. 2005) (emphasis added). Thus, it is possible for Section 552 to apply to non-design professionals. *See First United Bank & Trust v. PNC Fin. Servs. Grp., Inc.,* 667 F.Supp.2d 443, 457 (M.D. Pa. 2009) (applying § 552 exception to a financial institution); *Comcast Spectacor L.P. v. Chubb & Son, Inc.*, 2006 WL 2302686, *22 n.33 (E.D. Pa. Aug. 8, 2006) (applying § 552 exception to an insurance broker).

Plaintiff's Amended Complaint pleads sufficient facts to state a cause of action for negligent misrepresentation. Specifically, the Amended Complaint sufficiently pleads that

Intertek supplied false information during the course of its business for Brand's use during the course of Brand's business transactions.  Furthermore, the Amended Complaint sufficiently pleads that Brand justifiably relied upon Intertek's representations.  The Court will decline to dismiss Count I at this early stage of the litigation.  *See First United*, 667 F.Supp.2d at 457 ("Construing the complaint in the light most favorable to [plaintiff], the Court finds that the allegations are sufficient at this early stage of the case to state a negligent misrepresentation claim that fits under the narrow exception to the economic loss rule announced in *Bilt–Rite*.").

### **Reecon Is Not an Indispensable Party to this Litigation**

Defendant next argues that plaintiff's Amended Complaint should be dismissed for failure to join an "indispensable" party – namely Reecon.  The primary factors to be considered by this Court in determining whether a party is indispensable are listed in Fed. R. Civ. P. 19 as follows:

(a) Persons Required to Be Joined if Feasible.

(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19.  *See also Field v. Volkswagenwerk AG*, 626 F.2d 293, 297 (3d Cir. 1980).

10

The United States Court of Appeals for the Third Circuit in *McArthur v. Rosenbaum Co. of Pittsburgh*, 180 F.2d 617 (3d Cir. 1950), succinctly described Rule 19's application in this fashion: "[t]he two tests, therefore, as to what constitutes an indispensable party are: (1) Is the interest of the alleged indispensable party such as will be directly affected legally by the adjudication? (2) Will the failure to join the alleged indispensable party be inconsistent with equity and good conscience?" *Id.* at 621-22.

In this case, complete relief may be granted among the parties. The thrust of Intertek's argument is that because Reecon was a party to the contract, disposing of the action without Reecon's joinder would impede Reecon from protecting its interest and/or leave a substantial risk of duplicative litigation. However, as rehearsed, Brand was not a party to the Certification Agreement. As Brand's claims are not contract based, Reecon will still be able to protect its' interest and there is no threat of duplicated litigation.

### IV.   <u>Conclusion</u>

For these reasons, as to the motion to compel arbitration (doc. no. 25), said motion is DENIED.

As to the motion to dismiss (doc. no. 27), with the exception of Count V (negligence - - which plaintiff has agreed to dismiss), viewed in light of the foregoing pleading standards, this Court simply cannot say, at this early stage of the proceedings, that plaintiff will be able to state no set of facts in support of its claims against defendant. Accordingly, said motion to dismiss (doc. no. 27) is DENIED.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All ECF Counsel of Record