IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRAND MARKETING GROUP, LLC *doing business as* THERMABLASTER,

        Plaintiff,

v.

INTERTEK TESTING SERVICES NA, INC. *doing business as* INTERTEK TESTING SERVICES, and CONTINENTAL APPLIANCES, INC., d/b/a/ PROCOM

        Defendants.

12cv1572

**ELECTRONICALLY FILED**

### Memorandum Order

Pending before this Court are the parties' motions for summary judgment (doc. nos. 72, 74 and 76). After careful consideration of the motions (doc. nos. 72, 74 and 76), and responses thereto (doc. nos. 81, 84, and 85), all motions will be DENIED, and this matter shall proceed to trial.

### I. Factual Background

The facts, as previously set forth by the Court at the motion to dismiss phase, may be fairly summarized as follows. Plaintiff, Brand Marketing Group, ("Brand") is a limited liability company which imports and sells vent free gas room heaters throughout the United States. Defendant, Intertek Testing Services, N.A., Inc. ("Intertek NA') is a subsidiary of Intertek Group PLC ("Intertek Group"), a multinational inspection, product testing and certification company headquartered in London. Intertek Testing Services Shenzhen, Ltd. ("Interteck Shenzhen") is a separate corporate subsidiary of Intertek Group located in Guangzhou, China. *Id.* Intertek NA is a Nationally Recognized Testing Laboratory accredited to certify products compliant with

North American Safety Standards. However, Intertek Shenzhen, the location where the relevant testing in this matter took place, is not accredited to certify compliance with North American Safety Standards.

Prior to Brand's involvement in the circumstances at issue here, Reecon M & E Co., Ltd. ("Reecon"), a Chinese manufacturing company, had contracted with Intertek NA for testing services related to other unrelated products. Doc. No. 19 at Exhibit 4, and Doc. No. 31, Exhibit C.

Following Ace Hardware Corporation's ("Ace") indication of an intent to purchase the heaters in December 2010, Brand contacted Reecon regarding the manufacture of the heater. Once Brand received the purchase order from Ace on April 26, 2011, Brand worked with Reecon to have the heaters certified "compliant" with American National Standards Institute ("ANSI") standards, which govern unvented room heaters for sale in the United States.

In exchange for money paid by Reecon, in accordance with the Certification Agreement, Intertek NA provided testing and certification services for the heaters. The heaters were tested to the ANSI standard at Intertek Shenzhen.

On November 14, 2011, Intertek issued a Test Report certifying compliance with an ANSI standard. Plaintiff alleges that even though Intertek Shenzhen was not an accredited Nationally Recognized Testing Laboratory, on February 29, 2012, Intertek NA issued an Authorization to Mark ("ATM") indicating that a product complies with the standard it was tested to (in this case ANSI Z21.11). According to Plaintiff, the test report and ATM were representations made by Intertek NA that the heaters complied with the applicable ANSI standard.

On December 12, 2011, defendant ProCom, a direct competitor of Brand, and the only other company from whom Ace purchased vent free heaters, sued Brand alleging patent infringement. On December 14, 2011, ProCom sent Ace a letter advising of the alleged patent infringement. Ace temporarily restricted the sale and distribution of Brand's heaters.

Then, on March 8, 2012, Intertek NA suddenly suspended its listing and labeling privileges for Brand's heaters, and Intertek NA advised Reecon to quarantine all inventories of products covered by the November 14, 2011 test report. On March 12, 2012, an Intertek NA employee, Rick Curkeet, sent an email to Ace advising that "the Thermalblaster (sic) units have been found to be in non-compliance with the specified standard. We are expecting the manufacturer to take appropriate actions in this matter. Obviously you should quarantine those you have and keep them out of the market."

According to Plaintiff, "[t]his purposeful action and others by Intertek NA were intended to and did result in harm to Brand's contractual relationship with Ace."

On May 11, 2012, Ace formally notified Brand that it breached its warranties to Ace, and demanded that Brand accept immediate return of the unsold heaters, and on July 9, 2012, filed a lawsuit against Brand seeking damages in the amount of $453,221.74 for the cost of the heaters that Ace cannot sell, plus costs. Ace obtained a default judgment against Brand in the amount of $611,060.45.

Brand filed suit in the Court of Common Pleas of Allegheny County, Pennsylvania, on September 20, 2012, and this matter was properly removed to this Court on October 30, 2012. Doc. No. 1. After two rounds of motions to dismiss and a motion to compel arbitration, all of which were ultimately denied by this Court, on February 5, 2013, Plaintiff filed a Second Amended Complaint alleging the following tort theories: (1) Misrepresentation (Section 552 of

the Restatement of Torts (Second)); (2) Interference with Contractual Relations; (3) Disparagement; (4) Corporate Defamation against Defendant Intertek, NA; and Counts (5) (6) and (7), for Disparagement, Corporate Defamation and Interference with Contractual Relations (respectively) against Continental Appliances, Inc. d/b/a/ ProCom.  Doc. No. 42.  Plaintiff and Continental Appliances, d/b/a ProCom, then filed a stipulation to strike certain allegations from the Second Amended Complaint, which this Court granted on March 21, 2013, thereby eliminating ProCom as a Defendant in this case.  Doc. No. 47.

      Defendant Intertek then filed its Answer and Counterclaim, wherein it alleged Counterclaims of (1) Defamation, (2) Commercial Disparagement, (3) Fraud, and (4) Unfair Competition/Trademark Infringement for Plaintiff's premature use of the Mark.  Doc. No. 44.

      Plaintiff moves for summary judgment on the basis that, as a matter of law, (1) Defendant Intertek, NA, is vicariously liable for the actions of its servant, Intertek Testing Services Shenzhen, Ltd;  Defendant Intertek, NA both (2) negligently, and (3) fraudulently, supplied information for the guidance of others that contains misrepresentations (false advertising and false safety test results) under Restatement of Torts 2d § 552.  Plaintiff further moves for summary judgment on Intertek NA's Counterclaims for Trademark Infringement and Fraudulent Concealment, primarily on the basis that Intertek has unclean hands, and cannot establish damages as a matter of law.  Doc. No. 76.

      Defendant Intertek, NA, on the other hand, also moves for summary judgment, contending that Plaintiff cannot establish that a causal link between the alleged conduct of Intertek NA and its claimed damages.  Additionally, Defendant Intertek, NA, argues that Plaintiff cannot establish the required elements for its defamation, disparagement and tortious interference with contract claims.  Doc. No. 72.  Finally, Defendant Intertek, NA, moves for

summary judgment as to its Fourth Counterclaim for Trademark Infringement/Unfair Competition.  Doc. No. 74.

## II.     Standard of Review

Summary judgment is only proper when there is no genuine issue of material fact in the case and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c)(2); *Horn v. Thoratec Corp.*, 376 F.3d 163, 165 (3d Cir. 2004).  In reviewing a motion for summary judgment, the role of the court is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." Am. *Eagle Outfitters v. Lyle & Scott Ltd.,* 584 F.3d 575, 581 (3d Cir. 2009). If so, summary judgment will not be granted.

The district court must view all of the facts in the light most favorable to the non-moving party, who is entitled to "every reasonable inference that can be drawn from the record," and if "there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties."  *Reedy v. Evanson*, --- F.3d ----, 2010 WL 2991378, *8 (3d Cir. 2010) (quoting *Merkle v. Upper Dublin Sch. Dist.,* 211 F.3d 782, 788 (3d Cir. 2000) and *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)). A party cannot, however, defeat a motion for summary judgment by pointing to fragmentary inferences that could be massaged to support his or her position.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." M*atsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

## III.     Conclusion

Judging the facts in the light most favorable to the non-moving party, the Court finds that summary judgment is precluded on any count of the Second Amended Complaint, or the

Counterclaim, because numerous genuine issues of material facts exist which must be resolved by a jury in order for a proper determination of the following issues: whether Intertek, NA is vicariously liable for the actions of its servant, Intertek Schenzhen; whether Intertek NA negligently misrepresented itself under Restatement of Tort 2d § 552; whether Intertek, NA fraudulent mispresented itself; whether Plaintiff would foreseeably rely upon this mis-information; whether the actions of Intertek NA were the cause of the harm that befell Plaintiff; whether Plaintiff Infringed Defendant's Trademark, and if so, what is the proper measure of damages, or whether Defendant came with unclean hands.  It is the function of the jury to weigh the differing versions of the factual narratives. Summary judgment is therefore inappropriate, and the Court will decline to grant either party's motion thereon.  The motions for summary judgment (doc. nos. 72, 74 and 76) are therefore DENIED.

The parties shall diligently prepare for trial, set for September 3, 2013, after fully participating in a second mediation session which was originally noticed for May 30, 2013, by mediator, the Honorable Eugene Scanlon, that apparently did not occur as Ordered by the Court. See doc. nos. 50 and Text Order of 1/29/13 Granting Motion to Compel Second Mediation Session.  The parties shall file a renewed notice setting forth the new date of the mediation on the docket on or before June 12, 2013, so that the Court may track the new date.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc: All ECF Counsel of Record